564 So.2d 548 (1990)
Joanne A. HOSSEINI, Appellant/Cross-Appellee,
v.
Mirkamal Afsah HOSSEINI, Appellee/Cross-Appellant.
No. 89-02816.
District Court of Appeal of Florida, First District.
July 10, 1990.
Rehearing Denied August 9, 1990.
*549 Ned I. Price, Jacksonville, for appellant, cross-appellee.
Charles B. Lembcke of Datz, Jacobson & Lembcke, P.A., Jacksonville, for appellee, cross-appellant.
BOOTH, Judge.
This cause is before us on appeal from a final judgment ruling on appellant's motions for modification of child support, for contempt, to prohibit alienation of property, and for attorney fees. On appeal, appellant contends the trial court erred in denying modification of child support. Appellee has filed a cross appeal asserting that the court erred in holding him in contempt for failing to pay for orthodontic treatment and private school tuition for his minor children, and erred in requiring him to pay appellant's attorney fees and costs.
Final judgment of dissolution of marriage was entered May 23, 1986, terminating the parties' 15-year marriage. The final judgment incorporated the agreement of the parties that: appellant have the primary physical residence of the two children, now ages 13 and 15; appellee pay child support of $500 a month per child; appellant continue coverage for the minor children on her existing dental insurance plan; and appellee pay all dental expenses of the minor children not covered by appellant's insurance. The parties also agreed that the minor children would continue to attend Jacksonville Country Day School (a private school) or a private school of comparable quality so long as the financial circumstances of the parties permitted. The parties were to negotiate in good faith as to who would pay the tuition.
At the time of the final judgment of dissolution in May 1986, appellant was unemployed, and appellee was the president and sole stockholder of RTO Rents, Inc. (RTO), which operated with a negative cash flow and provided no income to him. His net worth was approximately $50,000.
After the 1986 judgment of dissolution, appellee's financial circumstances underwent a marked improvement. In 1988, he earned $45,000 as an employee of RTO and sold his ownership interest in that business for $1,050,000, of which he netted $450,000. Thereafter, he built a $300,000 residence that was on the market at the time of the hearing for $399,000. In January 1989, appellee had a net worth of $700,000. In March 1989, he owned, free and clear, a piece of commercial property in Jacksonville valued at $200,000 and a residence in Deerwood. He subsequently mortgaged his property to buy a large tract of agricultural property in California for a purchase price of $337,000, and with the remaining mortgage monies, appellee purchased a $66,000 certificate of deposit. Since the entry of the final judgment, appellee has paid a fine of $52,000 for having illegally taken one-half million dollars in assets from Iran to the United States. He has also purchased and sold a condominium unit at $33,000 profit and paid off all of his debt service and credit card debt. He remarried in July of 1989 and testified that his new wife's money would decrease his expenses. His financial affidavit reflects his improved standard of living, a standard greatly exceeding that of his two daughters.
After the divorce, appellant's financial circumstances declined. During the three years between the divorce and her motions for contempt and modification of child support, appellant worked at various jobs making a little over minimum wage and then decided to remain a full-time housewife and mother to the children. She has no marketable skills, only one semester of college education, and she did not work outside the home during the marriage. The wife testified that the $1,000 monthly child support she has received does not meet the children's expenses, that since the divorce, her father has given her between $75,000 and $80,000 for living expenses, but that even so, she has been unable to afford the lessons and extracurricular activities which the children enjoyed during the marriage. Because appellee refused to pay tuition, appellant has been able to send only one of her children to private school. The dental insurance policy covering the children's dental care lapsed because she could no longer afford to make payments.
*550 In its final order on appellant's motions for modification of child support, contempt, and attorney fees, the trial court found:
Husband has experienced a material, permanent and substantial change in financial circumstances. Husband has engaged in entrepreneurial activities resulting in increased wealth for him. The Court also finds that Wife has attempted to work at various jobs since the entry of the Final Judgment of Dissolution of Marriage but that due to her lack of marketable skills and education she will not earn any monies substantially in excess of minimum wage.
Despite the trial court's findings on the changed and relative financial circumstances of the parties, the court nonetheless denied the motion for modification without explanation.
The trial judge concluded that appellee was in a financially superior position to pay for the children's tuition, orthodontic, and dental expenses, and that appellee "willfully and intentionally refused to negotiate with Wife with regard to the minor children's private school education which was mandated." The court granted appellant's motion for contempt for appellee's willful and intentional failure to abide by his obligation to the minor children regarding their dental and private school expenses. The court withheld adjudication of contempt on the condition that appellee reimburse appellant for the child's past orthodontic and dental expenses, and reimburse appellant for any tuition expenses incurred by her for the school year 1988-1989.
We find no error in the trial court's ruling as to the children's school tuition and orthodontic and dental expenses, and therefore affirm as to the issues raised on the cross appeal. We hold, however, that the trial court erred in denying appellant's petition for modification of child support. Section 61.13(1)(a), Florida Statutes, provides for modification of child support obligations where "there is a substantial change in the circumstances of the parties." In the instant case, the trial judge found a substantial increase in appellee's financial circumstances. Those findings are not in dispute and call for an upward modification of appellee's child support obligation. Smith v. Smith, 474 So.2d 1212 (Fla. 2d DCA 1985), review denied, 486 So.2d 597 (Fla. 1986); Meltzer v. Meltzer, 356 So.2d 1263 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 460 (Fla. 1979); Schottenstein v. Schottenstein, 384 So.2d 933, 935 (Fla. 2d DCA 1980), review denied, 392 So.2d 1378 (Fla. 1980). In Smith, the court held that the child is entitled to share in the good fortune of both parents, stating (474 So.2d at 1213):
[W]e remind [the father] that a child is entitled to share the good fortune of both parents. [citation omitted]. The child's residence with his mother does not mean that the father must do no more than provide a survival level of support. In this case, as previously noted, the father is not even paying his fair share of the child's basic needs.
In Meltzer, supra at 1265, the Florida Supreme Court held the modification of child support from $500 to $750 per month for two minor children by the physician father, whose income had substantially increased, was insufficient, holding:
Where the appellant establishes a prima facie case for an increase in child support, it is an abuse of discretion for the lower court not to make some award... . Likewise, where there is an increase in support payments, but that increase is not consonant with the established needs of the children, the trial judge abuses his discretion by not providing for an adequate amount... . Even where the only change in circumstance is nothing more than a substantial increase in the earnings of the former spouse, child support may nonetheless be increased... .
... We conclude that the child support payments authorized by the trial judge were simply not in proportion to the father's ample earnings and the abundant needs of the school age children... . We are convinced that there is a need to improve the quality of the children's home, schooling, food, clothing, transportation and recreation. The *551 present level of child support is insufficient to meet the needs of growing children in light of the father's current capability to more adequately support his children. It is our view that he should be required to do so. We find that the trial judge's failure to raise the child support payments to a more adequate level was sufficient to constitute an abuse of discretion.
As to the award of attorney fees, the award must be reversed and remanded because the court failed to set forth specific findings as required by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). We also note Standard Guaranty Insurance Company v. Quanstrom, 555 So.2d 828, 835 (Fla. 1990), wherein the Florida Supreme Court recognized that due to the unique nature of family law cases, special and distinct factors are relevant in setting attorney fees, and concluded that the lodestar method of review would not be an inappropriate starting point. All factors considered in awarding fees should be specified by the court in its order. See Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989); Wilkins v. Wilkins, 546 So.2d 44 (Fla. 4th DCA 1989); Lanham v. Lanham, 528 So.2d 80 (Fla. 2d DCA 1988).
Accordingly, the judgment is reversed and the cause remanded for modification of child support and entry of an appropriate order on fees in accordance herewith.
SHIVERS, C.J., concurs.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring and dissenting.
I concur with all aspects of the majority's opinion except that part requiring the trial court on remand to set forth specific findings supporting its order granting attorney's fees. I am aware of no Florida appellate decisions which had, before the supreme court's decision was announced in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), imposed any inflexible requirement on trial judges to recite specific findings justifying attorney fee awards in domestic relations cases. Following Rowe, the first case to so hold was Boyle v. Boyle, 485 So.2d 879 (Fla. 2d DCA 1986).[1] It is my opinion, however, that those cases applying the lodestar analysis in domestic relations cases are in error.
Rowe, as indicated in the majority's opinion at bar, was recently revisited by the Florida Supreme Court in Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), where the court identified three general classes of cases involving the assessment of attorney's fees. The third category, in which the present case falls, involves family law, eminent domain, and estate and trust proceedings. In discussing this particular grouping, the court noted that although the basic lodestar method of computing a reasonable attorney's fee in a marital dissolution or post-dissolution proceeding could be an appropriate starting point, it also observed that one of the essential steps in the lodestar analysis  the contingency risk factor  is inapplicable because the rules regulating the Florida Bar specifically prohibit an attorney from entering into a contingency fee arrangement with a client in such cases. Id. at 835.
An additional reason, not explicitly articulated in Quanstrom,[2] as to why a contingency factor is not applicable, is that the underlying statutory basis for the fee, Section 61.16, Florida Statutes (1987), does not require that fees be awarded to the prevailing party. The statute has instead been interpreted as permitting an award of fees, regardless of the outcome of the case, *552 based on the relative financial resources of the parties. Travieso v. Travieso, 447 So.2d 940 (Fla. 3d DCA 1984), approved in part, quashed in part on other grounds, 474 So.2d 1184 (Fla. 1985). See also Kissinger v. Mason, 436 So.2d 1049 (Fla. 1st DCA 1983).
Therefore, because the lodestar method for assessing a reasonable attorney's fee is clearly inapplicable to this category of cases, the necessity for specific findings in support of attorney's fee awards in such cases is similarly inapplicable.
NOTES
[1] See also Parker v. Parker, 553 So.2d 309 (Fla. 1st DCA 1989); Frechter v. Frechter, 548 So.2d 712 (Fla. 3d DCA 1989); Schorb v. Schorb, 547 So.2d 985 (Fla. 2d DCA 1989); Maas v. Maas, 541 So.2d 160 (Fla. 2d DCA 1989).
[2] The court in Quanstrom did point out that the courts should comply with the purposes of the fee-authorizing statute, and noted that a significant purpose of section 61.16 is to assure that each party in such cases receives adequate legal representation in light of the relative needs and financial resources of the parties. Quanstrom, 555 So.2d at 835.