677 So.2d 323 (1996)
Carolyn W. MATTHEWS, Appellant/Cross-Appellee,
v.
Floyd L. MATTHEWS, Appellee/Cross-Appellant.
No. 95-1906.
District Court of Appeal of Florida, First District.
April 23, 1996.
*324 David A. Garfinkel of Datz, Jacobson, Lembcke & Garfinkel, Jacksonville, for Appellant/Cross-Appellee.
Abraham I. Bateh of the Law Offices of Bateh & Clark, Jacksonville, for Appellee/Cross-Appellant.
*325 BENTON, Judge.
A mother and former wife appeals the denial of her post-dissolution petition for modification seeking an increase in child support. She also contends the trial court abused its discretion in failing to award her attorney's fees. We reverse and remand for further proceedings. Her former husband cross appeals denial of his motion for modification of the final judgment seeking reduction of permanent alimony. On cross-appeal, we affirm without discussion.
The circuit court has "the authority to modify child support ... so long as the modification is requested and supported by ... evidence," Norwood v. Norwood, 466 So.2d 5, 6 (Fla. 5th DCA 1985), justifying modification. E.g., Guadine v. Guadine, 474 So.2d 1245 (Fla. 4th DCA 1985); § 61.14(1), Fla. Stat. (Supp.1994). Even when a court of another jurisdiction has originally ordered child support, Florida courts have the
authority to order support commensurate with the current needs of the obligees and the current ability of the obligor, without being bound by previous support orders.
Koon v. Boulder County, Dep't of Social Servs., 494 So.2d 1126, 1129 (Fla.1986). Concurring in Koon, then Chief Justice McDonald "emphasize[d] that no modification of an order of support ... can be entered without... proof of a substantial change in circumstances warranting it." Id. But see State, Dep't of Health and Rehabilitative Servs. v. Davis, 616 So.2d 1207 (Fla. 2d DCA 1993), review dismissed, 624 So.2d 265 (Fla. 1993).
"A party seeking a change in the amount of child support has the burden of proving a substantial change in circumstance, which change is significant, material, involuntary [for a party seeking to make lower payments] and permanent in nature." Bernstein v. Bernstein, 498 So.2d 1270, 1273 (Fla. 4th DCA 1986).
Here the trial court concluded that "the heavy burden which is imposed upon the parties to show substantial changes in circumstances has not been met." If, as the mother contends, this was a ruling that her burden to show changed circumstances is more onerous because the child support order she seeks to modify incorporated an agreement between the parties, the ruling was in error. A party seeking a change in child support bears the burden of proof, but need notat least when seeking an increaseprove a "more substantial" change in circumstances simply because the existing decree setting child support incorporated an agreement of the parties. Tietig v. Boggs, 602 So.2d 1250, 1251 (Fla.1992) ("party seeking an increase in child support need only prove a substantial change ... similar to that required ... [where] judgments ... do not incorporate a settlement agreement"); Hyatt v. Hyatt, 672 So.2d 74 (Fla. 1st DCA 1996); Montante v. Montante, 627 So.2d 554 (Fla. 4th DCA 1993); § 61.14(7), Fla. Stat. (Supp. 1994).
"The law is clear that the parents may not contract away the rights of their child for support." Armour v. Allen, 377 So.2d 798, 799-800 (Fla. 1st DCA 1979) ("Child support is a right which belongs to the child. It is not a requirement imposed by one parent on the other; rather it is a dual obligation imposed on the parents by the State." Id. at 800). There is no "justification for imposing a heavier burden where the [original child support] provision is established by agreement than where it is imposed by the court," Bernstein, 498 So.2d at 1273; Essex v. Ayres, 503 So.2d 1365 (Fla. 3d DCA 1987), if the obligor does not seek a reduction.[1] Nobody seeks a reduction here.
*326 The cases teach that a substantial increase "in the paying parent's income is itself sufficient to constitute a change in circumstances warranting an increase in child support without a demonstration of increased need." Miller v. Schou, 616 So.2d 436, 437 (Fla.1993); Hosseini v. Hosseini, 564 So.2d 548, 550 (Fla. 1st DCA 1990). Here the evidence suggests the father's income has increased significantly since 1987 when the amount of child support was set. Just as a "paying parent's income" may change, the income of a custodial parent who receives child support payments may change, Alfrey v. Alfrey, 553 So.2d 393 (Fla. 4th DCA 1989); Clark v. Render, 530 So.2d 437 (Fla. 3d DCA 1988); Wanstall v. Wanstall, 427 So.2d 353 (Fla. 5th DCA 1983), and a child's need for monetary support may also change. See Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA), review dismissed, 531 So.2d 169 (Fla. 1988). The parties alleged changes of all three kinds in the present case, but the trial court made no findings as to any of these allegations.
In order to show a change in circumstances sufficiently substantial to justify an order modifying the child support award, the mother relies on the amendment to section 61.30(1)(b), Florida Statutes, Ch. 92-138, § 11, at 1177, Laws of Fla., which changed the statute to read:
The guidelines may provide the basis for proving a substantial change in circumstances upon which a modification of an existing order may be granted.
§ 61.30(1)(b), Fla.Stat. (Supp.1994). The trial court made no "specific finding on the record, explaining why ordering payment of such guideline amount would be unjust or inappropriate," § 61.30(1)(a), Fla.Stat. (Supp. 1994), see Jones v. Jones, 636 So.2d 867 (Fla. 4th DCA 1994), or why variance from the guidelines did not demonstrate a substantial change in circumstances. See Ballantyne v. Ballantyne, 666 So.2d 957 (Fla. 1st DCA 1996); Whight v. Whight, 635 So.2d 135 (Fla. 1st DCA 1994).
The father invokes the qualifying threshold requirement set out in the (later added, Ch. 93-208, § 5, at 2069, Laws of Fla.) sentence immediately following the sentence in section 61.30(1)(b), Florida Statutes (Supp.1994), on which the mother relies:
However, the difference between the existing order and the amount provided for under the guidelines shall be at least 15 percent or $50, whichever amount is greater, before the court may find that the guidelines provide a substantial change in circumstances.
§ 61.30(1)(b), Fla.Stat. (Supp.1994). The father points to private school tuition he pays for one of the parties' children:
Taking the factors set forth above into account in determining the guideline child support obligation reveals that the husband is already paying close to the guideline amounts. The husband's gross monthly income is $11,573.33. He pays Federal taxes of $2,586.42 per month and FICA of $944.50. He also pays health insurance premiums of $122.00 per month. This results in a net monthly income of $7,920.41.
The wife, on the other hand, has a gross monthly income of $3,410.58. However, based upon her tax history, the wife's Federal income tax obligation is $289.90 per month. Additionally, she has an FICA obligation of $230.00 per month. This results in a net monthly income of $2,890.68. Accordingly, the joint income of the two parents is $10,811.09. The husband earns 73% of this amount.
The basic guideline child support amount based upon these income figures is $2,288.83 per month. The wife contributes $167.00 for health insurance for the minor children. Seventy-five percent (75%) [sic[2]] of the amount paid for health insurance must be added to the basic guideline amount. See 61.30(7) [sic], Florida Statutes. *327 Accordingly, the total monthly obligation for child support is $2,414.08. The husband's share of this support, based upon his earning 73% of the total combined income of the two parties, is $1,762.23. Giving the husband credit or a set-off for the $340.00 per month he pays for the youngest child's private schooling, the husband's guideline payment should be $1,422.28. Pursuant to the original Agreement and Order, he is paying $1,400.00. There is a net difference between these two figures of less than 5%.
(Emphasis altered.) At all pertinent times, both parents have been in agreement that their youngest child should attend private school. Cf. Jelke v. Jelke, 233 So.2d 408, 410 (Fla. 3d DCA), cert. denied, 238 So.2d 107 (Fla.1970). Based on their stipulation, the trial court has ordered the father to pay the tuition.[3]
That the child attends private school has not diminished the child's need for food, clothing, shelter, or the other components of "the minimum child support need." § 61.30(6), Fla.Stat. (Supp.1994). By ordering the father to pay tuition, the court in effect adjusted the minimum child support award upward based on "[e]xtraordinary ... educational ... expenses." § 61.30(11)(a), Fla.Stat. (Supp.1994). Cf. Aust v. Aust, 644 So.2d 536, 537 (Fla. 5th DCA 1994) (on remand trial court could "consider any special needs of the children (such as private school tuition), which cannot be met by an award five percent above the minimum amount set in the guidelines"). We conclude that "the amount provided for under the guidelines," § 61.30(1)(b), Fla.Stat. (Supp.1994), includes such adjudicated adjustments as well as all adjustments mandated by statute.
Although we reject the father's proposed treatment of private school tuition, we are unable, assuming the validity of the numbers in the father's brief, to conclude that the guidelines are an appropriate basis on which to find a change in circumstances which would, under section 61.30(1)(b), Florida Statutes (Supp.1994), justify a modification in the amount of child support.[4] But if, as the *328 mother's guidelines calculation states, she has qualifying monthly child care expenses[5] of $160, the statute requires the conclusion that there has been a sufficiently substantial change in circumstances to provide a basis for modification, taking the child care expenses into account and using the other figures set out in the father's answer brief. The case is that close.
Since section 61.30(1)(b), Florida Statutes (Supp.1994) requires a discrepancy of "at least 15 percent or $50, whichever is greater, before the court may find that the guidelines provide a substantial change in circumstances," the guidelines alone would not justify a finding of changed circumstances if $2,040.96 is the correct guideline figure.[6] The amount the father is now paying ($1,740 monthly$1400 to the mother and $340 to the school) is only 14.75% below $2,040.96. But if, as appears from the mother's guideline calculations of record, she incurs qualifying monthly child care expenses of $160, 75% of that amount$120should be added to the parents' shared monthly obligation, bringing the total to $2915.83, and the father's assumed 73%-share to $2128.56. The $1,740 the father is now paying is 18.25% below $2,128.56, a variance which the statute recognizes as a basis for proving a substantial change in circumstances.
In short, our review is hampered by the complete lack of findings of fact in the order on appeal. It is not for us to make fact findings in cases of this kind in the first instance. We would not presume to intrude on the trial court's prerogative in this regard. Nor do we suggest that detailed findings of fact are necessary in every case in which modification of a child support order is sought. But fact finding is necessary here to decide whether section 61.30(1)(b), Florida Statutes (Supp.1994) applies and, if so, how to give it effect. We are hopeful that fact finding on remand will lead the trial court and the parties to a result that will obviate the need for further appellate proceedings. If our hope is not realized, fact finding will also have the virtue of making meaningful appellate review possible.
We also believe the trial court should have the opportunity to revisit the question of attorney's fees after fact finding has taken place. The record suggests there may be a substantial disparity not only between the parties' incomes but also with regard to the net worth of their assets. We therefore reverse as to child support and attorney's fees, but affirm as to alimony.
BOOTH and WOLF, JJ., concur.
NOTES
[1] The Tietig majority concluded that "the heavy burden rule is inapplicable only when an increase in child support is sought." Tietig v. Boggs, 602 So.2d 1250, 1251 (Fla.1992). Whether there is still a heavier burden for the parent seeking a downward modification in child support where the existing order embodies a settlement agreement is an open question after enactment of chapter 93-208, section 3, at 2068, Laws of Florida. The Legislature seems to have adopted the view espoused in the separate opinions in Tietig, which categorically rejected "two different burdens of proof for establishing a change of circumstance that justifies a modification." Id. (Overton, J., dissenting). On the other hand, "a parent may agree to a child-support obligation that exceeds the duty imposed by law. See Garcia v. Gonzalez, 654 So.2d 1064 (Fla. 3d DCA 1995)." Dowie v. Dowie, 668 So.2d 290, 292 (Fla. 1st DCA 1996); Richter v. Richter, 666 So.2d 559 (Fla. 4th DCA 1995).
[2] The statute does not allow a 25% reduction of the amount of health insurance costs. It provides:

Health insurance costs resulting from coverage ordered pursuant to s. 61.13(1)(b) shall be added to the basic obligation.
§ 61.30(8), Fla.Stat. (Supp.1994).
[3] In an appropriate case, a court may order a parent to pay private school tuition for a child, even if the parents do not so stipulate. Gibson v. Gibson, 596 So.2d 1223 (Fla. 2d DCA 1992) (father required to pay private school tuition where parties had enjoyed "lavish lifestyle"); Stefanowitz v. Stefanowitz, 586 So.2d 460, 463 (Fla. 1st DCA 1991) (father required to pay private school tuition where transfer to private school resulted in "complete turnaround in ... attitude" of child with special needs); Hosseini v. Hosseini, 564 So.2d 548, 550 (father whose "entrepreneurial activities result[ed] in increased wealth" obliged to pay private school tuition).

Private educational expenses may be awarded as part of child support payable by a noncustodial parent where that parent has the ability to pay for private school, and such expenses are in accordance with the family's customary standard of living and are in the child's best interest. Luskin v. Luskin, 492 So.2d 783 (Fla. 4th DCA 1986) (private school tuition payable where children had attended a private school during the parties' marriage and guardian ad litem recommended that children continue to attend private school in order to minimize disruption of their lives caused by parties' separation); Kaufman v. Kaufman, 491 So.2d 584 (Fla. 3d DCA 1986) (private school tuition payable in accordance with the children's customary standard of living); Ault v. Ault, 431 So.2d 302 (Fla. 2d DCA 1983) (private school expenses payable where the noncustodial parent was a practicing attorney with a substantial annual income and children had been attending private schools during the marriage); Fox v. Haislett, 388 So.2d 1261 (Fla. 2d DCA 1980) (private school expenses payable where noncustodial parent had paid for several years of private schooling for the child and had earlier agreed to pay all such expenses, and where child had been experiencing academic difficulties in public school); and Hendry v. Hendry, 340 So.2d 942 (Fla. 4th DCA 1976) (private school tuition payable by noncustodial father with net worth of several million dollars).
Wilson v. Wilson, 559 So.2d 698, 700 (Fla. 1st DCA 1990). In a case in which the parties' incomes ($13,000 versus $3,600 monthly) roughly approximated the incomes of the parties here, the father was "ordered to pay $20,000 annually for private school tuition" in addition to monthly payments of $4,000 to the mother; the appeals court found the monthly payments (but not the tuition) to be excessive because the father also had "direct expenses allocable to the children when they were with him ... [of] $2,618 per month." Lickle v. Lickle, 606 So.2d 391 (Fla. 4th DCA 1992).
[4] The $2,414.08 that the father posits as "the total monthly child support obligation" must be increased by the $340.00 monthly tuition payment the trial court also ordered. All of the health insurance premiums the mother incurs not just 75%must also be added to the basic obligation. § 61.30(8), Fla.Stat. (1995). In other words, the figure must also be increased by an additional $41.75 (25% of $167), to arriveusing only the figures in the father's answer briefat the amount ($2,795.83) to be allocated between the parties, based on their relative incomes. § 61.30(9), Fla.Stat. (Supp.1994).
[5] If applicable, the statute requires that 75% of child care costs or $120 be added to the basic obligation.

Child care costs incurred on behalf of the children due to employment, job search, or education calculated to result in employment or to enhance income of current employment of either parent shall be reduced by 25 percent and the shall be added to the basic obligation.... Child care costs shall not exceed the level required to provide quality care from a licensed source for the children.
§ 61.30(7), Fla.Stat. (Supp.1994).
[6] Seventy-three percentagain using the numbers in the father's briefof $2,795.83, see ante, n. 3, is $2040.96.

Each parent's percentage share of the child support need shall be determined by dividing each parent's net income by the combined net income.
§ 61.30(9), Fla.Stat. (Supp.1994).